IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK CHARLES DOUGLAS, III, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | No. 18-4894 |
|     Defendant. | : | |

**MEMORANDUM OPINION**

TIMOTHY R. RICE                                                                                    September 13, 2019
U.S. MAGISTRATE JUDGE

      Plaintiff Frank Charles Douglas alleges the Administrative Law Judge ("ALJ") erred in partially denying his application for Disability Insurance Benefits ("DIB") by (1) improperly applying the "medical improvement" statute and (2) finding without substantial evidence that his disability ended as of July 1, 2017. Pl. Br. (doc. 13) at 4. I disagree and deny Douglas's claim.[1]

      The ALJ must evaluate the record under the medical improvement framework in a benefits termination case. See Allen v. Barnhart, 417 F.3d 396, 398-99 (3d Cir. 2005); see also Kuzmin v. Schweiker, 714 F.2d 1233, 1238 (3d Cir. 1983) (requiring the medical improvement analysis for benefits termination cases). Although continuing disability reviews are not usually conducted for three years after an initial determination of benefits, 20 C.F.R. § 404.1590(f), they may be conducted earlier if "[e]vidence . . . raises a question as to whether [the] disability continues," id. § 404.1590(b)(9). The ALJ must find an adequate showing of medical improvement when determining that a claimant's disability is limited to a closed period of time,

---

[1]     Douglas consented to my jurisdiction on November 13, 2018 (doc. 7), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

and may terminate a claimant's disability benefits when substantial evidence shows that medical improvement restored a claimant's ability to work. Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987); see also Miller v. Astrue, No. 08-4838, 2009 WL 1876032, at *8, 13 (E.D. Pa. May 29, 2009).

The ALJ performed Douglas's initial disability determination at the same time as a medical improvement review. Although this is an unusual dual inquiry, it is not prohibited and may be justified by the unique facts of a case. See 20 C.F.R. § 404.1590(b)(9). After the October 2017 hearing, the ALJ determined Douglas was disabled from April 2, 2014 to June 30, 2017, but medically improved and was no longer disabled as of July 1, 2017. R. at 24, 31. For the period of disability, the ALJ found that Douglas had the Residual Functional Capacity ("RFC") to "perform sedentary work . . . except could do no walking or standing, but could sit on an unlimited basis with a sit/stand option at will. He could only occasionally climb stairs, stoop, but could not climb ladders, crouch, crawl. He must avoid extreme heat, humidity, unprotected heights, and hazards. He would need to use the bathroom 7 to 8 times a day." Id. at 18. As of July 1, 2017, however, the ALJ found that Douglas's condition had medically improved, and he had achieved the RFC to perform his prior sedentary work because he could walk or stand up to an hour per day. Id. at 24. The second, medically improved, RFC did not include any reference to frequent bathroom use. Id.

Douglas is not entitled to disability benefits if he no longer has the physical or mental impairments that rendered him disabled. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(f). Medical improvement is "any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings." 20 C.F.R. § 404.1594(b)(1). To

2

determine continued disability, ALJs consider eight steps, including[2]:

> (3) Has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4).
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section. If medical improvement is related to your ability to do work, see step (6).
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first groups of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.
>
> (7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

20 C.F.R. § 404.1594(f).

Douglas argues the ALJ improperly applied the medical improvement analysis, usually reserved for continuing disability review, to his initial determination of benefits at the October 2017 hearing. Pl. Br. at 8. He fails, however, to cite any law to support his argument. Because there was evidence that Douglas's condition had medically improved, the ALJ did not err in awarding Douglas benefits for a closed period of April 2, 2014 to June 30, 2017, and, in the same

---

[2] Douglas does not contest the ALJ's findings as to steps (1) and (2), and the ALJ does not discuss steps (5) and (8). Pl. Br. at 8 n.3.

proceeding, terminating his benefits as of July 1, 2017 based on medical improvement. See 20 C.F.R. § 404.1590(b)(9).

Douglas maintains that the ALJ's analysis regarding his medical improvement was limited to one sentence without further explanation. See Pl. Br. at 16. I disagree. The ALJ based her determination on: (1) Douglas's normal ejection fraction;[3] (2) Dr. Brett Victor's observations in a June 22, 2017 office visit that Douglas "has done relatively well"; (3) Dr. Victor's observations that Douglas "has not had any shortness of breath and was able to ambulate at his baseline"; (4) Douglas's lack of surgery; (5) Douglas's lack of inpatient hospitalizations; (6) Douglas's lack of emergency room visits; (7) the claimant's conservative treatment; (8) Douglas's lack of significant medical side effects; (9) Douglas's lack of significant neurological deficits; (10) Douglas's lack of muscle atrophy; (11) Douglas's ability to walk without a cane; (12) the absence of any Medical Source Statement for this period of time; and (13) Douglas's ability to take care of his personal needs without assistance. R. at 24.

The ALJ extensively discussed Douglas's medical record, highlighted by Douglas's June 22, 2017 and March 9, 2017 office visits. Id. She noted Dr. Victor's findings from June 22 and his observations from March 9 that Douglas was doing "remarkably better. He can walk a flight of stairs without stopping and is back to his usual mild dyspnea on exertion." Id. Although Douglas was hospitalized in March 2017, this was largely due to his medication non-compliance. Id. at 461. Moreover, the ALJ credited Douglas's testimony, consistent with his signed Function Report, that he leaves the house three to four times a week to drive his mother to the store, goes on the computer, sorts newspapers, and reads books. Id. at 24, 39, 41. The ALJ also stated

---

[3] The ejection fraction measures the percentage of blood pumped by each heartbeat. Dorland's Illustrated Medical Dictionary (32nd ed. 2012) at 740.

Douglas's improvements allowed him to meet the demands of his prior work as a store manager at a sedentary exertional level based, in part, on Douglas's testimony that he sat for 75 to 80 percent of his work day. See id. at 24 (Douglas's prior work was actually performed at the sedentary level), 45 (describing prior work).

Contrary to Douglas's claim, restroom use is not "the most significant limitation" in the initial RFC. See Pl. Br. at 11. Although Douglas testified that he used the restroom 8-10 times a day, R. at 39, the ALJ's initial RFC specifically noted 7-8 times a day, id. at 24. The ALJ included this only to acknowledge the effect of Douglas's diuretic medication and did not identify it as a work-disqualifying limitation. Id. Further, the Vocational Expert's testimony that such frequent use of the restroom would result in being "off task" for 20% of the work day and would jeopardize a job applied only to an individual with an inability to walk or stand. Id. at 50-51. Once Douglas's ability to walk and stand improved, as the ALJ found, the bathroom issue diminished. It is undisputed that Douglas's heart condition and mobility medically improved based on Dr. Victor's June 22, 2017 and March 9, 2017 findings. As a result, Douglas could walk or stand up to an hour per day. Id. at 24, 462, 568.

The ALJ concluded that Douglas's increased mobility demonstrated sufficient medical improvement to allow him to perform his prior sedentary work. Id. at 24. Even if the ALJ had included Douglas's 7-8 restroom visits in the second, medically improved, RFC, there is no evidence that the restroom visits would have precluded Douglas from performing his prior sedentary work once his walking and standing had improved.[4] To the extent the ALJ erred by

---

[4] Douglas further concedes that the ALJ's failure to identify his congestive heart failure ("CHF") and edema as severe impairments "would be a harmless error and would not in itself merit remand" because the initial RFC included the limitations caused by Douglas's CHF and

not addressing Douglas's restroom visits, any error is harmless based on the ALJ's other findings and the medical evidence of improvement. See Wolfe v. Colvin, 203 F. Supp. 3d 469, 480 (M.D. Pa. Aug. 24, 2016) (so long as ALJ's decision is supported by substantial evidence and meaningful judicial review is permitted, error may be harmless).

The ALJ accurately summarized the record. See id. at 31, 39, 45, 50-51 (testimony), 455-62 (Ex. 8F), 591-95 (Ex. 9F). She had substantial evidence to establish Douglas's second, medically improved, RFC based on (1) the improvements noted by his doctor when he was medically compliant, (2) his lack of surgeries and relatively conservative treatment, and (3) his description of his daily lifestyle. Id. at 24; see also Neff v. Colvin, No. 3:14-CV-2278, 2015 WL 4878720, at *11-12 (M.D. Pa. Aug. 13, 2015).

An appropriate Order accompanies this opinion.

---

edema. Pl. Br. at 19. Moreover, the ALJ adequately credited Douglas's functional limitations stemming from his CHF and edema in the second, medically improved, RFC when she determined Douglas was no longer disabled. R. at 24.